**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

URSULA MAYES, EVA PEPAJ, JAIME
EDMONDSON, JAIME MIDDLETON,
JENNIFER ARCHULETTA, RACHEL
KOREN, TIFFANY TOTH, and VIDA
GUERRA,

               Plaintiffs,

        - against -

SUMMIT ENTERTAINMENT
CORPORATION d/b/a GENTLEMEN'S
QUARTERS and PHILLIP TRICOLLA,

               Defendants.

Case No. _____

**COMPLAINT**

(Jury Trial Demanded)

Plaintiffs URSULA MAYES, EVA PEPAJ, JAIME EDMONDSON, JAIME MIDDLETON, JENNIFER ARCHULETTA, RACHEL KOREN, TIFFANY TOTH, and VIDA GUERRA (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against defendants SUMMIT ENTERTAINMENT CORPORATION d/b/a GENTLEMEN'S QUARTERS and PHILLIP TRICOLLA (collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, in order to promote their strip club, Gentlemen's Quarters ("Gentlemen's Quarters"), in Baldwin, New York.

2.     As detailed below, Defendants theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43

- 1 -

of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices; d) defamation, and; e) various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote Gentlemen's Quarters, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, defendant Summit Entertainment Corporation ("Summit") is a corporation formed under the laws of the state of New York, with a principal place of business located at 2151 Grand Avenue, Baldwin, New York 11510. According to publicly available records, defendant Phillip Tricolla ("Tricolla") is the principal of Summit.

7.      Venue is proper in the United States District Court for the Eastern District of New York because Nassau County is Defendants' principal place of business.

8.      All parties have minimum contacts with Nassau County, a significant portion of the alleged causes of action arose and accrued in Nassau County, and the center of gravity for a

significant portion of all relevant events alleged in this complaint is predominately located in Nassau County.

## PARTIES

### *Plaintiffs*

9.      Plaintiff Ursula Mayes ("Mayes") is a well known professional model, and a resident of Orange County, California.

10.      Plaintiff Eva Pepaj ("Pepaj") is a well known professional model, and a resident of Los Angeles County, California.

11.      Plaintiff Jaime Edmondson ("Edmondson") is a well known professional model, and a resident of Pinellas County, Florida.

12.      Plaintiff Jaime Middleton ("Middleton") is a well known professional model, and a resident of Harris County, Texas.

13.      Plaintiff Jennifer Walcott Archuleta ("Archuletta") is a well known professional model, and a resident of Maricopa County, Arizona.

14.      Plaintiff Rachel Koren ("Koren") is a well known professional model, and a resident of Los Angeles County, California.

15.      Plaintiff Tiffany Toth ("Toth") is a well known professional model, and a resident of Orange County, California.

16.      Plaintiff Vida Guerra ("Guerra") is a well known professional model, and a resident of Los Angeles County, California.

### *Defendants*

17.      According to publicly available records, defendant Summit is a corporation formed under the laws of the state of New York, with a principal place of business located at

2151 Grand Avenue, Baldwin, New York 11510.  Summit operates Gentlemen's Quarters, a strip club located at 2151 Grand Avenue, Baldwin, New York 11510.

18.     Upon information and belief, defendant Tricolla is a resident of the State of New York. Astuto is identified by the New York State Liquor Authority as the principal of Summit. Upon information and belief, Tricolla, in his capacity as principal of Summit, maintains operational control over Gentlemen's Quarters, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

19.     As set forth immediately below, each Plaintiff is an extremely well known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

20.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

21.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Gentlemen's Quarters.

22.     In the case of each and every Plaintiff, such appearance was false.

23.     Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

24.     Mayes is a well known model who has appeared in *Maxim*, *Vogue*, *Elle*, *In Style*, *Cosmopolitan*, *Marie Claire* and many other publications.  On television, Mayes has appeared on *Deal or No Deal*, *Minute To Win It*, *The Tonight Show*, and *The Jay Leno Show*.  Mayes has also appeared in commercial campaigns for many companies, including Coronet Diamonds, Volkswagen, Subaru, and Bacardi, and was the cover model and star of the video game, *Juiced 2: Hot Import Nights.*

25.     That we know of, Mayes is depicted in the photos in Exhibit "A" to promote Gentlemen's Quarters on its Instagram and Facebook pages.  This Image depicts Mayes in a sexually suggestive outfit, and was intentionally altered to make it appear that Mayes was either a stripper working at Gentlemen's Quarters, or that she endorsed the Club.

26.     Mayes has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27.     Pepaj is a successful and highly in demand runway and high fashion model, who has appeared in many print campaigns, and commercials for products such as Diet Coke. Pepaj has also appeared in the films: *The Hand Off*, *Interior: Leather Bar*, *The Romp*, and on HBO's *True Detective*.

28.     That we know of, Pepaj is depicted in the photos in Exhibit "B" to promote Gentlemen's Quarters on its Instagram page.  This Image depicts Pepaj in a sexually suggestive outfit, and was intentionally altered to make it appear that Pepaj was either a stripper working at Gentlemen's Quarters, or that she endorsed the Club.

29.     Pepaj has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use

of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Middleton is an American model, Fitness model, businesswoman, nutritionist and spokeswoman, a graduate of Texas A&M University, a former NFL cheerleader, and the winner of the World's Fittest Model Competition.  Middleton as been the featured subject and cover girl on many fitness and women's magazines, and is currently a full-time spokesperson for Bodybuilding.com.  She has her own line of swimwear and a supplement line with Labrada nutrition. Middleton is a devout Christian, and is married to Michael Middleton, who is a worship leader in their church.  Middleton has more than 2 million social media followers between Facebook, Instagram, and Twitter.

31.     That we know of, Middleton is depicted in the photos in Exhibit "C" to promote Gentlemen's Quarters on its Twitter page.  This Image depicts Middleton in a sexually suggestive outfit, and was intentionally altered to make it appear that Middleton was either a stripper working at Gentlemen's Quarters, or that she endorsed the Club.

32.     Middleton has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Edmondson is a graduate of Florida Atlantic University, a former police officer and Miami Dolphins cheerleader, and was the January 2010 *Playboy* Playmate of the Month. Edmondson was a participant in the competitive reality TV series *The Amazing Race 14*, has served as a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio, and has appeared in *The Bunny House* documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets.  Edmondson has two

children with her fiancée, Major League Baseball superstar, Evan Longoria.

34.     That we know of, Edmondson is depicted in the photos in Exhibit "D" to promote Gentlemen's Quarters on its Instagram and Facebook pages . This Image depicts Edmondson in a sexually suggestive outfit, and was intentionally altered to make it appear that Edmondson was either a stripper working at a Gentlemen's Quarter, or that she endorsed the Club.

35.     Edmondson has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Guerra is a Cuban-born actress and model who has been named *FHM*'s Model of the Year, and has appeared in music videos for artists such as Kanye West and Nelly.  In addition to her appearances in *FHM* – which voted her Number 26 in that its "Top 100 Sexiest Females" list -- Guerra has appeared in various other magazines, including *DUB*, *Smooth*, *Escape*, and *Open Your Eye*s.   As an actress, Guerra has made multiple appearances on several Spanish language television programs, including, *El Gordo y la Flaca*, on Comedy Central's *The Chappelle Show*, in *National Lampoon's Dorm Daze 2,* and in commercials for various companies, including Burger King.  Guerra also appeared in the video game "Scarface: The World Is Yours."   In addition to her modeling and acting endeavors, Ms. Guerra has produced her own swimsuit calendars (and accompanying "behind the scenes" DVDs), as well as and a 2006 DVD entitled, *Vida Guerra: Exposed*.   Guerra is in high demand as a spokeswoman for fitness equipment, and in television shows and movies, and has over 260,000 Instagram followers.

37.     That we know of, Guerra is depicted in the photos in Exhibit "E" to promote

Gentlemen's Quarters on its Facebook page.  This Image depicts Guerra in a sexually suggestive outfit, and was intentionally altered to make it appear that Guerra was either a stripper working at a Gentlemen's Quarter, or that she endorsed the Club.

38.    Guerra has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.    Koren is an internationally known, and highly sought after, model who has walked runways for fashion shows in Miami's Mercedes Benz Fashion Week, filmed for travel TV show *Bikini Destinations*, shot for major campaigns in Los Angeles, and is the face of numerous major brands.  Koren can be seen across the nation on billboards, buildings and bus stops in a campaign for MIDORI along with Kim Kardashian.   As an actress, Koren has appeared in *Date Night*, with Steve Carell and Tina Fey, in *The Closer*, and many others.  She has also appeared in campaigns for brands such as Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, Modern Salon Magazine, No Fear, Axe Body Spray, Paul Mitchell, Vibra Magazine, Launch Pad Magazine, Cut & Dry Magazine, Hairdo Magazine, Sunset Tan, Divine Boutique, Esquire Magazine, Vogue Magazine, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, Rebel X Magazine, SNI Swimwear, Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, Maxim, Viva Glam Magazine, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, Swim Magazine, American Honey, Have Faith Swimwear.  She also owns her own company, Cashmere Hair Extensions, which appeared on ABC's *Shark Tank* in 2013.  She has over 122,000 followers on Instagram.

40.    That we know of, Koren is depicted in the photos in Exhibit "F" to promote

Gentlemen's Quarters on its Facebook pages.  This Image depicts Koren in a sexually suggestive outfit, and was intentionally altered to make it appear that Koren was either a stripper working at a Gentlemen's Quarter, or that she endorsed the Club.

41.     Koren has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Toth is an extremely successful model who was the September 2011 *Playboy* Playmate of the Month. Toth has also appeared in a variety of magazines including *Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, as well as appearing in countless other catalogs and publications. Toth's popularity and renown is evidence by the fact that she has over 2 million Facebook followers, over 700,000 Instagram followers, and over 100,000 Twitter followers.  In addition to her Toth's modeling work, she owns and maintains her own e-commerce site.

43.     That we know of, Toth is depicted in the photos in Exhibit "G" to promote Gentlemen's Quarters on its Facebook page.  These Images depict Toth in sexually suggestive outfits, and were intentionally altered to make it appear that Toth was either a stripper working at a Gentlemen's Quarter, or that she endorsed the Club.

44.     Toth has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Archuleta is an American model, actress, and reality TV star, who was the *Playboy* Playmate of the Month for August 2001.   She subsequently launched her own website, appeared in a variety of *Playboy* editions, was chosen by Carmen Electra to model for her

celebrity guest photographer photo shoot on Playboy.com, and has appeared in music videos for the likes of Justin Timberlake, Sterophonics, and Marc Anthony. Archuleta has appeared on the cover of numerous magazines, including *Holistic Health, Moves, American Curves, Muscle & Fitness, Hers, Physical, Iron Man, VP Racing Fuel*, and many others.  As an actress, Archuleta has appeared in *America Pie: Band Camp*, *The Pool Boys*, *Weakest Link, Street Smarts, Wild On!*, and *Ripley's Believe It or Not.*  Archuleta currently lives in Arizona, where she is raising her three children with her husband, former NFL star Adam Archuleta.

46.     That we know of, Archuletta is depicted in the photos in Exhibit "H" to promote Gentlemen's Quarters on its Instagram page.  This Image depicts Archuletta in a sexually suggestive outfit, and was intentionally altered to make it appear that Archuletta was either a stripper working at a Gentlemen's Quarter, or that she endorsed the Club.

47.     Archuletta has never been employed at Gentlemen's Quarters, has never been hired to endorse Gentlemen's Quarters, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

48.     Upon information and belief, Summit operates Gentlemen's Quarters, where it engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

49.     Upon information and belief, and in furtherance of its promotion of Gentlemen's Quarters, Summit owns, operates and controls Gentlemen's Quarters' social media accounts, including the Gentlemen's Quarters' Facebook, Twitter, and Instagram accounts.

50.     Summit uses the Gentlemen's Quarters' Facebook, Twitter, and Instagram

accounts to promote Gentlemen's Quarters, and to attract patrons thereto.

51.     Summit does this for its own commercial and financial benefit.

52.     Summit has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at Gentlemen's Quarters or endorsed Gentlemen's Quarters.

53.     Summit used Plaintiffs' Images, and created the false impression that they worked at or endorsed Gentlemen's Quarters in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

54.     As Summit was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by Gentlemen's Quarters and at no point have any of the Plaintiffs ever endorsed Gentlemen's Quarters.

55.     All of Summit's activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Summit did not compensate Plaintiffs for its use of their Images.

56.     As such, Plaintiffs have never received any benefit for Summit's use of their Images.

***Standard Business Practices in the Modeling Industry***

57.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

58.     The fee that a professional model, such as each of the Plaintiffs, will receive is

negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Theft of Plaintiff's Images***

59.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote their Club by and through various marketing and promotional mediums including, without limitation, the Clubs' Websites, Twitter, Facebook, and Instagram.

60.     Defendants showcased Plaintiffs' Images on the Club's Websites and social media sites in order to create the false impression that Plaintiffs worked at one or more of the Clubs, or endorsed one or more of the Clubs.

61.     Defendants did so in order to attract clientele to their Clubs, promote their Clubs, and thereby generate revenue for Defendants.

62.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed one or more of the Clubs.

63.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers. This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is

that they are each strippers.

64.     At no point were any of the Plaintiffs ever affiliated with any of the Clubs, or Defendants.

65.     Each of Plaintiffs' Images was used without her consent.

66.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

67.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

68.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Clubs' Websites, Twitter, Facebook, or Instagram accounts.

69.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

70.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:
### False Endorsement)

71.      Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72.     The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

73.     Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at one or more of the Clubs, or endorsed

one of more of the Clubs.

74.     This was done to promote and attract clientele to the Clubs, and thereby generate revenue for the Defendants.

75.     Thus, this was done in furtherance of Defendants' commercial benefit.

76.     Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, the Clubs, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Clubs.

77.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Clubs.

78.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of the Clubs, and the goods and services provided by the Clubs.

79.     Due to Defendants unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

80.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

81.     As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the Clubs' websites or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at one or more of the Clubs, or endorsed one or more of the

Clubs.

82.     At all relevant times, the Clubs' websites and social media accounts were used and operated by Defendants for advertising and trade purposes.

83.     The Clubs' websites and social media accounts were designed to attract business to the Clubs and generate revenue for Defendants.

84.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for the Clubs.

85.     At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

86.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Clubs.

87.     At no point did Defendants ever compensate Plaintiffs for its use of their Images.

88.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

89.     Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

90.     In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

91.     In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act,

Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

**THIRD CAUSE OF ACTION**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

92.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

93.     Defendants operated the Clubs' websites and social media accounts in order to promote the Clubs, to attract clientele thereto, and to thereby generate revenue for Defendants. As such, Defendants' operation of the websites and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

94.     Defendants published Plaintiffs' Images on the Clubs' websites and social media accounts in order to create the false impression that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

95.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Clubs.

96.     As Defendants were at all times aware, Plaintiffs never worked at any of the Clubs, never endorsed any of the Clubs, and never had any affiliation with any of the Clubs.

97.     Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs.

98.     As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club websites and social media accounts, each of the Plaintiffs' reputations was

injured, and each of the Plaintiffs' ability to market herself as a model was injured.

99.     As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have  been injured in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Defamation)

100.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

101.     As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote their Clubs to the general public and potential clientele.

102.     Defendants publication of said Images constitutes a representation that Plaintiffs was either employed by one or more of the Clubs, that they endorsed one or more of the Clubs, or that they had some affiliation with one or more of the Clubs.

103.     None of these representations were true.

104.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs.

105.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by the Clubs, had no affiliation with the Clubs, had not consented to the use of their Images, and had not been compensated for the use of their Images.

106.     In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Clubs, had no affiliation with

- 17 -

the Clubs, had not consented to the use of their Images, and had not been compensated for the use of their Images.

107.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

108.    Defendants' publication of Plaintiffs' Images constitutes defamation under New York law because said publication falsely accuses Plaintiff of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

109.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

110.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

111.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under New York law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

112.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five

thousand ($75,000), exclusive of punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

113.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

114.     Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of models that were used on the Clubs' websites and social media accounts.

115.     Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

116.     In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of Images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise their employees in order to ensure that these policies, along with Federal and New York law, were not violated.

117.     In addition, Defendants had a duty to refrain from appropriating the Images of those with whom it had not contracted, and had not paid.

118.     Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

119.     As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Conversion)

120.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

121.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests therein.

122.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

123.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

124.    Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

125.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

126.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at the Clubs, or endorsed the Clubs.

127.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

128.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

129.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to their Clubs.

130.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

131.    As such, Plaintiffs have been damaged in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION
### (Quantum Meruit)

132.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

133.    Plaintiffs are each world famous models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

134.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

135.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, or endorse their Club, Defendants have not compensated Plaintiffs.

136.    Plaintiff is therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

137.    Plaintiffs demand trial by jury.

- 21 -

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through eighth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         November 23, 2016

                                   **THE CASAS LAW FIRM, P.C.**

                                   By: /s/ John V. Golaszewski
                                        John V. Golaszewski, Esq.
                                        1745 Broadway, 17th Floor
                                        New York, New York
                                        T: 855.267.4457
                                        F: 855.220.9626

                                        *Attorneys for Plaintiffs*